**NUMBER: 25-11488-J**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

RHONDA JACKSON,

      Plaintiff-Appellant,

v.

SUMTER COUNTY, GEORGIA,

      Defendant-Appellee.

**On Appeal from the United States District Court**
**for the Middle District of Georgia, Albany Division**
**Case No. 1:22-cv-00207-LAG**

# REPLY BRIEF OF PLAINTIFF-APPELLANT, RHONDA JACKSON

Gregory O. Wiggins
Wiggins Childs Pantazis Fisher
& Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500
gwiggins@wigginschilds.com
*COUNSEL FOR PLAINTIFF-APPELLANT*

NUMBER: 25-11488-J
IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

RHONDA JACKSON,

    **Plaintiff-Appellant,**

v.

SUMTER COUNTY, GEORGIA,

    **Defendant-Appellee.**

---

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Rhonda Jackson, Plaintiff-Appellant, submits the following list of persons or entities which, upon information and belief of counsel for Appellants, have or may have an interest in the outcome of this case:

1.    William Greg Dobson, Lober & Dobson, LLC, Counsel for Plaintiff-Appellant.

2.    Honorable Leslie Abrams Gardner, Chief District Judge.

3.    Rhonda Jackson, Plaintiff-Appellant.

C-1

4.    A. Danielle McBride, Lober & Dobson, LLC, Counsel for Plaintiff-Appellant.

5.    Raleigh W. Rollins, Alexander & Vann, LLP, Counsel for Defendant-Appellee.

6.    Henry Thomas Shaw, Alexander & Vann, LLP, Counsel for Defendant-Appellee.

7.    Sumter County, Georgia, Defendant-Appellee.

8.    Gregory O. Wiggins, Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC, Counsel for Plaintiff-Appellant.

Plaintiff- Appellant in this appeal is an individual. Plaintiff-Appellant has no knowledge of the Defendant-Appellee's parent companies, subsidiaries, partners, limited liability entity members and managers, trustees, affiliates or similar entities.

Respectfully submitted,

*/s/ Gregory O. Wiggins*
Gregory O. Wiggins
Wiggins Childs Pantazis Fisher & Goldfarb, LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
gwiggins@wigginschilds.com
*Counsel for Plaintiff-Appellant*

C-2

## CERTIFICATE OF SERVICE

I hereby certify that there are no known non-CM/ECF participants for mailing by United States Postal Service, and that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on this 25th day of February 2026 which will send notification of such filing to the following:

Raleigh W. Rollins
H. Thomas Shaw
Alexander & Vann, LLP
411 Gordon Avenue
Thomasville, GA 31792

/s/ *Gregory O. Wiggins*
OF COUNSEL

## STATEMENT REGARDING ORAL ARGUMENT

Jackson does not request oral argument.

i

## <u>CERTIFICATE OF TYPE SIZE AND STYLE</u>

Pursuant to Eleventh Circuit Rule 28.1 (d) the following is the type size and styled used in this brief:

Times New Roman 14 pt.

# TABLE OF CONTENTS

**PAGES:**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ........................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

CERTIFICATE OF TYPE SIZE AND STYLE............................................... ii

TABLE OF CONTENTS ............................................................................. iii

TABLE OF AUTHORITIES............................................................................ iv

ARGUMENT IN REPLY ............................................................................. 1

   A.  Appellant's Discrimination Claim Should Have Survived
     A Summary Judgment Motion Under Both The *McDonnell-
     Douglas* Framework and the Convincing Mosaic Theory ............................. 2

   B.  There is also Evidence Supporting Plaintiff's Retaliation
     Claim ............................................................................................ 8

CONCLUSION ..................................................................................... 10

CERTIFICATE OF COMPLIANCE ................................................................ 11

CERTIFICATE OF SERVICE.......................................................................... 11

# TABLE OF AUTHORITIES

PAGE

*Akridge v. Alfa Ins.*, 94 F.4th 1181, 1192 (11th Cir. 2024) ........................................ 2

*Chapter 7 Trustee v. Gate Gourmet, Inc.,* 683 F.3d 1249,
    1256 (11th Cir. 2012) ...................................................................................... 3

*Frazier-White v. Gee,* 818 F.3d 1249,
    1258 (11th Cir. 2016) ...................................................................................... 9

*Ismael v. Roundtree*, 161 F.4th 752, 759
    (11th Cir. Dec. 5, 2025) ........................................................................... 2,3,4,8

*McDonnell-Douglas* ............................................................................................ 2,3

*Silverman v. Bd. of Educ., of City of Chicago*,
    637 F.3d 729, 733-34 (7th Cir. 2011) ) .............................................................. 3

*Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321,
    1328 (11th Cir. 2011) ) ..................................................................................... 2

## ARGUMENT IN REPLY

Appellee's response brief merely echoes the same erroneous arguments brought in the District Court and relied on by the court. In their Brief, the Appellees argue that (1) Appellant cannot make a *prima facie* case of disability discrimination and/or retaliation because the relevant decision makers were aware of Jackson's alleged disability at the time an investigation against her began; (2) Appellant cannot establish a "convincing mosaic" of discrimination; (3) Appellant cannot show that the decision makers had knowledge of any protected activity and that her grievance does not qualify as protected activity. App. Doc. 17 pp. 29-30.

Appellees also argue that if Appellant could establish a *prima facie* case, that they had shown that Appellant was discharged for a legitimate, non-discriminatory reason and that Appellant could not show that reason to be a pretext for discrimination or retaliation. App. Doc. 17 p. 30.

Appellee's positions are meritless and do not justify upholding the District Court's ruling. First, Appellant has established a both a convincing mosaic of discrimination and her *prima facie* case of disability discrimination. She has shown that there was both suspicious timing and knowledge of her disability on the part of the decision-makers, along with other evidence of disability discrimination. This same evidence can also be used to show pretext.

1

Second, in relation to Appellant's retaliation claim, she has provided evidence that she engaged in protected activity, not only through her grievance but also in her initial responses to the employer and her request for accommodation. All of this evidence was ignored or misconstrued by the District Court and is sufficient to create a question of material fact making the grant of summary judgment erroneous.

### A. Appellant's Discrimination Claim Should Have Survived a Summary Judgment Motion Under Both the *McDonnell-Douglas* Framework and the Convincing Mosaic Theory

Appellee's response brief discusses both the *McDonnell-Douglas* frame work and the "convincing mosaic" theory. In order to prove a case of disability discrimination the Plaintiff must show that her disability was a "but-for" cause for her termination. *Akridge v. Alfa Ins.*, 94 F.4th 1181, 1192 (11th Cir. 2024). An employment discrimination plaintiff can prove causation through either the *McDonnell-Douglas* framework or the convincing mosaic theory of discrimination/retaliation. *Ismael v. Roundtree*, 161 F.4th 752, 759 (11th Cir. Dec. 5, 2025). While often the most discussed method, the Eleventh Circuit has counseled that the *McDonnell-Douglas* method of proof was "never intended to be the *sine qua non* for a plaintiff to survive summary judgment in an employment discrimination case. *Ismael* at 759 citing *Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321,1328 (11th Cir. 2011).

2

This Court has held that "(1) a 'plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent' and (2) that 'a triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Ismael* at 759 citing *Smith* at 1328.

This Court has held that a "convincing mosaic" may be shown by "(1) suspicious timing, ambiguous statements..., and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of similarly situated employees, and (3) evidence that the employer's justification is pretextual." *Lewis* at 1018 (citing *Silverman v. Bd. of Educ., of City of Chicago*, 637 F.3d 729, 733-34 (7th Cir. 2011). If the plaintiff presents circumstantial evidence sufficient to raise "reasonable inference that the employer discriminated [retaliated] against the plaintiff, summary judgment is improper." *Chapter 7 Trustee v. Gate Gourmet, Inc.,* 683 F.3d 1249, 1256 (11th Cir. 2012)(quoting *Lockheed-Martin Corp.,* 644 F.3d at 1328).

This Court recently held that even if a plaintiff cannot establish a *prima facie* case under *McDonnell-Douglas*, their case is still entitled to a full review under the

convincing mosaic standard, instead of the *prima facie* case framework.[1] The *Ismael* court noted that to show pretext a plaintiff must show "both that the [employer's] reason is false, *and* that discrimination was the real reason" for the termination. *Ismael* at 760. The Court below incorrectly applied this standard to the summary judgment below and as a result is due to be reversed.

First, there was suspicious timing that did exist at the time of termination. It is clear, despite the Appellant's arguments and the District Court's findings to the contrary, that the decision makers in this case learned of Jackson's medical conditions before the decision to terminate her was made. In this case, Plaintiff-Appellant Jackson met with the decision makers, Harris and Volley, on April 12, 2022, and was told that Harris was recommending a written discipline. Doc. 19-21 p. 5 ¶ 35. According to Harris' sworn affidavit, she admits that within a few days of the April 12th meeting where Jackson was informed of the recommendation of a written warning, there was she describes as the "Initial Meeting" where Jackson informed her and Defendant for the "first time" that she "had underlying health

---

[1] Appellant originally argued that the standard for pretext and the convincing mosaic were virtually the same. Doc. 14 p.44. Appellant's brief was filed on November 4, 2025, a month before the Ismael decision was entered on December 5, 2024. *Ismael,* 161 F.4[th] 752 (11th Cir. Dec. 5, 2025). Since *Ismael,* Appellant recognizes that the standard for the two methods of proof are not the same.

conditions, including COPD and chronic kidney disease, that made her more vulnerable to COVID-19." Doc. 19-21 p. 6 ¶¶ 38-40.  Rayetta Volley also submitted an affidavit where she stated that she also learned for the first time about Plaintiffs' COPD and chronic kidney disease during the "Initial Meeting."  Doc. 19-3 p. 5 ¶¶ 22-24.

Volley also admits that at the time of this Initial Meeting, Harris was informed "that Plaintiff had violated the Harassment Policy; that Harris had recommended that Plaintiff receive a **written reprimand** due to that violation; and that [Volley] would consider Harris's recommendation and findings ad determine if and how Plaintiff should be disciplined." Doc. 19-3 p. 6 ¶ 26.  Volley also stated after being informed of Plaintiff's underlying health conditions, she asked Plaintiff to provide documentation regarding these health conditions and that she would consider the documentation in her determination of it, and what discipline should be handed out. Doc. 19-3 p. 6 ¶ 27.

According to Volley's affidavit, on April 19, 2022, Plaintiff provided her with a note from Dr. McClendon that stated Plaintiff was being treated for COPD  and that "she needs to take extra precautions outside of her home to protect herself against COVID and other respiratory infections." Doc. 19-3 p. 7 ¶ 32. Volley also admits that on April 20, 2022, Plaintiff provided her with another note from Dr. Smith that stated Plaintiff was under her care for Chronic Kidney Disease Stage 4

and that she had advised Plaintiff to avoid anyone with or suspected of having COVID. Doc. 19-3 p. 7 ¶ 33. Volley swore under oath that she "delayed making a decision regarding the discipline to be given to Plaintiff until [she] received the documentation (the McClendon Note and Smith Note) from Plaintiff. Doc. 19-3 p. 7 ¶ 34. Volley also testified that Plaintiff submitted a grievance about Harris's findings and recommendations on April 22, 2022. Doc. 19-3 p. 12 ¶ 54. In this grievance, Harris referenced her "several underlying medical conditions" that she had previously discussed with Harris and Volley and had provided doctor's notes to Volley. Doc. 19-14 p. 2.

Volley detailed how she agreed with Harris' determination that Plaintiff had violated the harassment policy. Doc. 19-3 p. 10 ¶ 44. However, she stated that after reviewing the information she possessed and after having received Plaintiff's grievance, meeting with Plaintiff and Harris about the grievance and receiving Harris's memorandum that summarized her findings and recommendations, Volley decided to reject Harris's recommendation and terminated Plaintiff on April 26, 2022. Doc. 19-3 pp. 11-14 ¶¶ 51-63.

Plaintiff-Appellant filed this lawsuit because of her termination by Volley, not simply because there was an investigation or recommendation by Harris. Contrary to what the District Court found and what Appellee argues, it is undisputed that Volley had full knowledge of Plaintiff's disabilities, including notes from her

doctors, when she made the decision to terminate her employment. Importantly, Volley admits that this information was reviewed in making the termination decision. This knowledge by the decisionmaker, helps Plaintiff-Appellant establish her circumstantial mosaic of disability discrimination.

Volley and Harris's affidavits also help establish the suspicious timing often relied upon in establishing a convincing mosaic. Harris claims that she did not have any knowledge of Plaintiff's medical conditions prior to making her recommendation of written discipline. Likewise, Volley claims that she had no knowledge of Plaintiff's medical conditions prior to Harris making the written discipline recommendations. After learning of the medical recommendations, Harris still recommended written discipline. However, after learning of the medical conditions, receiving the doctors' notes confirming the medical conditions, and receiving the written grievance discussing the underlying medical conditions, Volley decided to reject Harris's recommendation and to terminate Plaintiff. There is no evidence that Plaintiff was heading toward termination prior to Volley's receipt of information regarding her medical conditions. A reasonable jury could look at this evidence and determine that this timeline constitutes suspicious timing which would support a finding of disability discrimination. Therefore, the Court's summary judgment was in error.

Moreover, there is additional evidence regarding Defendants' and its employees' knowledge regarding Plaintiff's disability which helps establish the convincing mosaic of discrimination. There is abundant evidence that Plaintiff had taken FMLA because of her serious medical conditions and had been out of work on numerous occasions. *See* App. Doc. 14 pp. 35-39. There is also evidence that everyone in the office sprayed Lysol to combat COVID and Plaintiff had never been asked to stop spraying Lysol and that Plaintiff's lack of a past disciplinary history and lack of warning should have prevented her discharge under the "Discharge Policy." *See* App. Doc. 14 pp. 39-42. Based on all of this evidence, including the decisionmaker's knowledge and suspicious timing, a reasonable jury could determine that Plaintiff's termination was a "but-for" cause of her termination, making the grant of summary judgment on the disability claim erroneous.

**B.    There is also Evidence Supporting Plaintiff's Retaliation Claim**

Summary judgment was also granted on Plaintiff' retaliation claim. Plaintiff can also use the convincing mosaic theory to defeat summary judgment on a retaliation claim. *See Ismael* at 759 (The convincing mosaic standard is "applied in equal measure to claims of discrimination and retaliation."). Under this theory, Plaintiff does not have to meet the *prima facie* case and does not have to show pretext. All she must do is show evidence from which a jury could find that retaliation was a but-for cause of the termination.

8

In this case, there is little question decisionmakers knew about Plaintiff's disability at the time of her termination. There is also evidence that Plaintiff filed a Grievance contesting the outcome of Harris's investigation and her recommendation. This Grievance was based on the fact that Plaintiff had sprayed Lysol because of her serious medical conditions in order to protect her health. Doc. 19-14. The complaint about the unfair investigation and recommendation was directly tied to Plaintiff's medical conditions being the reason she sprayed the Lysol. Those facts make this Grievance a protected activity.

Additionally, there is also evidence that Plaintiff requested an accommodation from Volley for her medical conditions and disabilities, i.e., she requested that the chair next to her desk be moved. Doc. 19-3 p. 6 ¶¶ 28. Volley states that she asked Plaintiff if she required any accommodation and Plaintiff responded by asking for the chair to be moved. *Id.* Volley used the term "accommodations" in her affidavit. *Id.* Volley also states that she granted the accommodation request. Doc. 19-3 p. 7 ¶ 29. An accommodation request is protected activity under the ADAA. *See Frazier-White v. Gee,* 818 F.3d 1249, 1258 (11th Cir. 2016).

Given that Plaintiff engaged in protected activity under the ADA, she can also show a convincing mosaic of evidence of retaliation to overcome a summary motion. Plaintiff can show close and suspicious timing. She made her accommodation requests and submitted her grievance all within a week or two of her termination.

This close temporal proximity establishes the causal link between her protected activity and her termination. Also, the fact that the protected activity, like Volley's claims that of when she learned about the termination, were made between Harris's written discipline recommendation and Volley's termination decision show suspicious timing supporting a convincing mosaic of retaliation. When all of this evidence is considered in its totality, the District Court's grant of summary judgment on this claims is erroneous and should be reversed.

## CONCLUSION

Based on this Reply Brief and Plaintiff-Appellant's Initial Brief, the District Court's ruling dismissing Plaintiff's claims for both disability discrimination and retaliation are due to be reversed and sent back to the District Court for further proceedings.

Respectfully submitted,

*/s/ Gregory O. Wiggins*
Gregory O. Wiggins
Wiggins Childs Pantazis Fisher & Goldfarb, LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
gwiggins@wigginschilds.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

Counsel for the Appellant certifies that the Brief for Plaintiff-Appellant complies with the type-volume limitation as it contains 2,317words according to the word-count function of the word-processing system used to prepare the brief.

## CERTIFICATE OF SERVICE

I hereby certify that there are no known non-CM/ECF participants for mailing by United States Postal Service, and that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on this 25th day of February 2026 which will send notification of such filing to the following:

Raleigh W. Rollins
H. Thomas Shaw
Alexander & Vann, LLP
411 Gordon Avenue
Thomasville, GA 31792

/s/ *Gregory O. Wiggins*
OF COUNSEL

11